DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Charles C. Dent has appealed from his conviction in the Summit County Court of Common Pleas of having a weapon while under disability. This Court affirms.
 I {¶ 2} On September 30, 2004, Defendant-Appellant Charles C. Dent was indicted on two counts of felonious assault in violation of R.C.2903.11(A)(2), felonies of the second degree, one count of improperly discharging a firearm at or into a habitation or school in violation of R.C. 2923.161(A)(1), a felony of the second degree, one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree, two counts of intimidation of a crime victim or witness in violation of R.C. 2921.04(B), and one count of possession of marijuana in violation of R.C. 2925.11(A). The State filed a supplemental indictment on October 4, 2004 and indicted Appellant on two firearm specifications in violation of R.C. 2941.145. Appellant pled not guilty to all counts, including the firearm specifications.
 {¶ 3} A jury trial commenced on January 12, 2005[1] and Appellant was subsequently found not guilty on the intimidation of crime victim or witness counts, not guilty of improperly discharging the firearm at or into a habitation or school, and not guilty of the felonious assault counts; the jury did however find Appellant guilty of having a weapon while under disability. The jury found Appellant not guilty of the firearm specifications. Appellant was sentenced to a definite term of two years incarceration.
 {¶ 4} Appellant has timely appealed his conviction asserting one assignment of error.
 II Assignment of Error Number One
"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED [APPELLANT'S] MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIM.R. 29."
 {¶ 5} In his sole assignment of error, Appellant has asserted that the trial court erred when it denied his Crim.R 29 motion. Specifically, Appellant has argued that his conviction for having a weapon while under disability was against the manifest weight of the evidence and not supported by sufficient evidence. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks
(1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id, at paragraph two of the syllabus; see, also, Thompkins,78 Ohio St.3d at 386.
 {¶ 7} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 9} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 10} Appellant was convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(2). It is undisputed that Appellant was under disability pursuant to R.C. 2923.13(A)(2) and that a gun was fired from a vehicle in which Appellant was an occupant into a residential home. At issue is whether the evidence supports a conviction and/or is against the manifest weight of the evidence on the remaining elements of the crime. Pursuant to R.C. 2923.13(A)(2):
"(A) Unless relieved from disability as provided in [R.C. 2923.14], no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if any of the following apply:
"(2) The person is under indictment for or has been convicted of any felony offense of violence[.]"
In the instant matter, Appellant has challenged the evidence supporting the finding that he "had" a firearm.
 {¶ 11} "In order for an individual to `have' a firearm within the meaning of R.C. 2923.13, he must actually or constructively possess it."State v. Najeway, 9th Dist. No. 21264, 2003-Ohio-3154, at ¶ 10, citingState v. Martinsons (June 17, 1998), 9th Dist. Nos. 2708-M 2713-M, at 6. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Messer (1995),107 Ohio App.3d 51, 56, appeal not allowed (1996), 75 Ohio St.3d 1422. (Citation omitted). `"[M]ere access to the weapon can establish guilt, that is, ownership is not a prerequisite to determining whether someone `had' the weapon."' Najeway at ¶ 10, quoting State v. Robinson (Oct. 25, 2000), 9th Dist. No. 19905, at 9. "Moreover, circumstantial evidence can be used to support a finding of constructive possession." Najeway, at ¶ 10, citing State v. Grundy (Dec. 9, 1998), 9th Dist. No. 19016, at 22.
 {¶ 12} In the case sub judice and relevant to the instant appeal, Ruth Robinson ("Robinson") testified to the following. Robinson lived at 1212 Hardesty Boulevard Akron, Ohio with her daughter Veronica. On the morning of September 21, 2004 Appellant, Veronica's ex-boyfriend, appeared at Robinson's house. An argument ensued and when Robinson went to call the police she heard three gunshots; she turned to see Appellant driving a white Blazer truck, leaning out the window looking at her house. Robinson did not see who fired the shots; she only heard the shots, which she later discovered struck her house. Robinson did not see anyone else in the Blazer as it went by. Robinson did not have her glasses on when she saw Appellant in the Blazer. As Appellant drove away from her house the driver's side of the vehicle was closest to her house.
 {¶ 13} Veronica Robinson ("Veronica") testified to the following. She heard Appellant and Robinson arguing about a van that was parked in the back of Robinson's house. Appellant wanted to take it and Veronica didn't want him to; they continued arguing and Veronica finally convinced Appellant to leave and told him she would call him later. Appellant said: "Okay. That's the way you are going to act." Appellant then ran off the porch, down the street, and entered his white Blazer, which was parked three houses away from Robinson's. Appellant got in the driver's seat and the window was down; Appellant was the only person Veronica saw in the Blazer. Veronica had started to walk away from the doorway, but turned around and saw Appellant driving about five miles an hour toward the house with the window still down; she proceeded into the hallway and heard the gunshots. Veronica did not see who fired the shots.
 {¶ 14} On direct examination Officer Iverson of the Akron Police Department ("APD") testified to information concerning the charges on which Appellant was found not guilty. On cross-examination Officer Iverson testified that he knew Appellant from his patrol and from the community, specifically his involvement in youth athletics and he never knew him to have any involvement with a firearm. Officer Iverson testified, on re-direct, that no gun was recovered from the scene because the person that shot the gun was not found on the scene when the police arrived and that Appellant was no longer on the scene when the police arrived.
 {¶ 15} Detective Rich Morrison of the APD testified to the following. After arresting and mirandizing Appellant, Appellant provided a statement to Det. Morrison. Appellant stated that he had gone to Robinson's house to retrieve a van and when it became clear he was not going to get the van he went back to his white Blazer that was running and he heard gunshots; Appellant's friend then started shooting back at Robinson's house. Appellant stated he got into the back of the Blazer and did not state who his friend the shooter was. Appellant did not want to get the shooter involved so he did not provide the police with his name. Det. Morrison was never able to locate the white Blazer or the person Appellant claimed shot at Robinson's house.
 {¶ 16} Det. Morrison testified to the following on cross-examination. Appellant told him that he was a convicted felon and was not allowed to possess a gun and that he had never owned a gun in his life. Appellant told Det. Morrison that he had no idea that his friend was going to shoot at Robinson's house. Appellant also told him that Robinson had fired a shot at him and he was caught in the cross-fire on the way back to the Blazer. There were reports of three shots being fired, but only two holes were found in Robinson's house.
 {¶ 17} After the trial court admitted several of the State's exhibits, the State rested and Appellant made a Crim.R. 29 motion. The trial court denied the motion. Appellant rested without presenting evidence and renewed his Crim.R. 29 motion. The trial court again denied the motion.
 {¶ 18} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the jury clearly lost its way when it found Appellant guilty of having a weapon under disability. The record contained evidence from which the jury could have found that Appellant knowingly, either actually or constructively, had the handgun used to shoot at Robinson's house. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's conviction was not against the manifest weight of the evidence simply because the jury chose to believe the testimony of Robinson and Veronica over Appellant's statements to the APD. State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Moreover, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson
(1993), 86 Ohio App.3d 29, 33. As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, supra.
 {¶ 19} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency." Roberts, supra at 4. Accordingly, having found that Appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err in denying Appellant's motion for acquittal. Appellant's sole assignment of error is without merit.
 III {¶ 20} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, J., Reece, J., Concur.
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] Prior to trial the trial court dismissed, upon motion by the State, the possession of marijuana count.