OPINION
{¶ 1} Jermaine F. Williams appeals the judgment of the Trumbull County Court of Common Pleas, finding him guilty of having a weapon while under disability, with a firearm specification, improperly handling firearms in a motor vehicle, and sentencing him to a prison term totaling six years. We affirm his convictions, but vacate his sentences, and remand this matter for resentencing.
 {¶ 2} After midnight, May 29, 2004, detectives Melanie Gambill and Dave Weber of the Warren police, and Vince Peterson, of the Trumbull County Probation Department, were patrolling southwest Warren, attempting to serve outstanding warrants. The area is notable for the high instance of drug and other criminal activity. The officers were wearing black vests marked "police" both on the front and back. They were driving an unmarked SUV, equipped with blue and red flashing lights, and sirens.
 {¶ 3} At approximately 12:30 a.m., the officers saw a Cadillac pull sharply into a driveway on Second Street. The driver stopped halfway up the driveway, then turned off his lights. The officers pulled into the parking lot of a nearby funeral home to observe the Cadillac. It remained in the driveway several minutes. The driver neither exited the car, nor did anyone from the darkened house come out to greet him. Eventually, the Cadillac backed out of the driveway, and moved several lots down Second Street, and stopped. Its headlights were not activated during this period.
 {¶ 4} The officers decided to investigate, and drove along Second Street towards the Cadillac. The Cadillac began moving again, and pulled into the driveway of 338 Second Street, with the officers following. The Cadillac continued to the end of the driveway, and turned into the backyard. Detective Gambill activated the flashers on the SUV, which pulled into the backyard behind the Cadillac. As the officers scrambled from their SUV, they noticed the driver of the Cadillac lean over in front of the passenger seat of his car.
 {¶ 5} Detective Weber approached the driver's side of the Cadillac, and demanded that the driver exit. The driver complied. Detective Weber glanced inside the opened door, and noticed a Browning .380 semiautomatic pistol protruding from beneath the front passenger's seat. Detective Gambill recovered the pistol, which had a full clip of ammunition, and a live round in the chamber.
 {¶ 6} The driver of the Cadillac was Mr. Williams, previously convicted of three felonies. Mr. Williams was arrested, and indicted for having a weapon while under disability, in violation of R.C.2923.13(A)(2) and (3) and (B), a felony of the third degree, with a firearm specification, R.C. 2941.145, and for improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B)and (I)(2), a felony of the fourth degree. Mr. Williams pled not guilty to all charges.
 {¶ 7} March 25, 2005, Mr. Williams moved to suppress any evidence relating to his arrest, alleging that the arresting officers lacked reasonable suspicion to affect an investigative stop. Hearing was held on the motion to suppress May 13, 2005; and, the parties filed memoranda in support and in opposition to the motion. June 7, 2005, the trial court overruled the motion to suppress. That same day, Mr. Williams moved to reopen the suppression hearing, due to newly discovered evidence. The trial court granted this motion June 11, 2005. A second hearing was held July 29, 2005, and the parties filed further memoranda. August 23, 2005, the trial court once again overruled the motion to suppress.
 {¶ 8} Jury trial of this matter commenced August 29, 2005. August 31, 2005, the jury returned verdicts of guilty against Mr. Williams on each charge. September 19, 2005, sentencing hearing was held. September 22, 2005, the trial court entered sentence on Mr. Williams. Mr. Williams received a prison term of three years for having weapons while under disability, with three years on the firearms specification, to be served prior to and consecutively to the disability term. He also received eleven months for improperly handling firearms in a motor vehicle, the term to run concurrently with his other sentence.
 {¶ 9} Mr. Williams timely noticed this appeal October 24, 2005, making four assignments of error:
 {¶ 10} "[1.] The trial court erred in denying appellant's motion to suppress evidence obtained by the state.
 {¶ 11} "[2.] The trial court abused its discretion by not admitting into evidence a written report by the investigating police officer.
 {¶ 12} "[3.] The appellant's convictions are against the manifest weight of the evidence.
 {¶ 13} "[4.] Appellant's sentence of three years for a felony of the third degree and eleven months for a felony of the fourth degree pursuant to 2929.14(B), violates his Sixth Amendment right to a jury trial."
 {¶ 14} Under his first assignment of error, Mr. Williams argues that the arresting officers lacked reasonable suspicion to conduct an investigative stop. He notes there was no evidence that he was driving too fast or erratically. He further disputes that he drove without headlight illumination, in violation of R.C. 4513.03(A) and 4513.15(A). Mr. Williams introduced testimony that his Cadillac was fitted with day running lights, which are on at all times. Thus, he postulates that there was no traffic violation justifying his stop.
 {¶ 15} We disagree.
 {¶ 16} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284, 288.
 {¶ 17} On review, an appellate court must accept the trial court's findings of fact if they are supported by some competent and credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must then independently determine, as a matter of law, whether the applicable legal standard has been met. Id. See, also, State v. Swank, 11th Dist. No. 2001-L-054, 2002-Ohio-1337, at 7-8.
 {¶ 18} This court has held, "* * * that when a police officer witnesses a motorist in transit commit a traffic violation, the officer hasprobable cause to stop the vehicle for the purpose of issuing a citation." State v. Teeter (Oct. 6, 2000), 11th Dist. No. 99-A-0073, 2000 Ohio App. LEXIS 4656, at 10 (emphasis added). "* * * [T]he reasonableness of the stop is fulfilled by the probable cause for the stop." State v. Hale, 11th Dist. No. 2004-L-105, 2006-Ohio-133, at ¶ 24.
 {¶ 19} In this case, the trial court determined that the day running lights on Mr. Williams' Cadillac did not provide the thousand feet of illumination required by R.C. 4513.03(A). It further determined that Mr. Williams did not have any rear illumination when he pulled from the driveway of the first house at which he parked, and moved his car down the street. This was a violation of R.C. 4513.05(A). Thus, there were two traffic violations, if the testimony of the arresting officers was believed. As the trier of fact on the motion to suppress, the trial court was entitled to rely on the testimony of the arresting officers: this court will not disturb such a factual finding.
 {¶ 20} The first assignment of error is without merit.
 {¶ 21} By his second assignment of error, Mr. Williams challenges the trial court's decision to exclude, as hearsay, a written narrative prepared by Detective Weber at the time of the arrest. Mr. Williams notes that Detective Weber failed to mention in his report that Mr. Williams was driving without headlights. Mr. Williams contends that the report should have been admitted into evidence pursuant to Evid.R. 803(6), the hearsay exception for records of regularly conducted business activities. On cross examination, Detective Weber admitted that it is common practice to prepare such reports of arrests, and that they are used to refresh an officer's recollection of the incidents leading to an arrest.
 {¶ 22} A trial court's evidentiary rulings may only be disturbed for abuse of discretion. In re Corey, 11th Dist. No. 2005-G-2649,2006-Ohio-2013, at ¶ 27. "Abuse of discretion" is more than mere error of law or judgment. It means that the trial court's decision is unreasonable, arbitrary, or unconscionable. Id. at ¶ 16.
 {¶ 23} In this case, Mr. Williams' counsel failed to note to the trial court any exception to the hearsay rule which would allow the introduction of the arresting officers' report. It is well established that police reports are, generally, inadmissible hearsay. State v.Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 111. There is one exception to this rule, under Evid.R. 803(8)(b), which allows a defendant to offer a police report into evidence, "unless the sources of information or other circumstances indicate lack of trustworthiness." Evid.R. 803(8)(b).
 {¶ 24} In this case, Mr. Williams' counsel did offer the narrative into evidence, in order to show the discrepancy between the events recorded therein, and those testified to, by the arresting officers on the stand. The state could hardly object that a report prepared by one of the officers was untrustworthy. Despite counsel's subsequent failure to note the Evid.R. 803(8) (b) hearsay exceptions to the trial court, it seems to us that the trial court abused its discretion in failing to allow the report into evidence.
 {¶ 25} Nevertheless, any error in this regard was harmless. Crim.R. 52(A); cf. Village of Waite Hill v. Popovich, 11th Dist. No. 2001-L-227, 2003-Ohio-1587, at ¶ 26. Defense counsel was allowed to cross-examine Detective Weber about the report, and was allowed to discuss it in closing argument. The jury was certainly made aware that the report contained no reference to any lack of headlights. Only the jury could weigh the effect of this discrepancy between the narrative and the arresting officers' testimony.
 {¶ 26} The second assignment of error is without merit.
 {¶ 27} By his third assignment of error, Mr. Williams attacks his convictions as being against the manifest weight of the evidence. He reiterates his position that the police had no reasonable suspicion to stop him, since his Cadillac had day running lights (even if he had not turned on his regular headlights). He notes his own testimony that he did not know the Browning pistol was in his car, as well as the fact that others had access to and used his car.
 {¶ 28} While couched in terms of a manifest weight challenge, Mr. Williams' third assignment of error seems to attack the sufficiency of the evidence, as well. The analysis applicable to each of these legal concepts is different. Cf. State v. Dykes, 11th Dist. No. 2005-L-131,2006-Ohio-4165, at ¶ 15. A challenge to the sufficiency of the evidence concerns whether the state has presented evidence on each element of an offense. Dykes at ¶ 15. A manifest weight challenge concerns the believability of the evidence presented. Id.
 {¶ 29} A challenge to the sufficiency of the evidence raises a question of law of due process. Dykes at ¶ 17. On review, an appellate court must ask whether any rational fact finder could have found all elements of the offense charged beyond a reasonable doubt. Id. The evidence adduced at trial, and all reasonable inferences, must be viewed in a light most favorable to the state. Id. An appellate court may not disturb a verdict for insufficiency of the evidence absent a finding that reasonable minds could not have reached that verdict. Id. A finding of sufficiency being required to submit a case to the jury, determination that a conviction is supported by the weight of the evidence is also dispositive of the question of sufficiency. State v.Thomas, 9th Dist. Nos. 22990 and 22991, 2006-Ohio-4241, at ¶ 6.
 {¶ 30} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered.State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 31} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.
 {¶ 32} When assessing witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. "Indeed, the fact finder is free to believe all, part, or none of the testimony of each witness appearing before it."Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at *8. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 33} In order to be adjudged guilty of having weapons under disability, a defendant must be found to have "knowingly" acquired, have, carried or used a firearm or dangerous ordnance, R.C. 2923.13(A), while being a member of certain groups. These groups include those convicted of felonies of violence, and those convicted of drug crimes. Mr. Williams does not dispute that he belongs to each of these categories of citizens. Rather, he cites his own testimony that he did not know the Browning pistol was in his Cadillac, to attack the mens rea element of the crime.
 {¶ 34} This argument fails. The jury was free to infer that Mr. Williams was aware that the pistol was protruding from beneath his front passenger seat, and thus, that he "knowingly" had the weapon. This inference is not against the manifest weight of the evidence; it is a matter of common logic. Consequently, the state produced sufficient evidence to require submission of the issue to the jury. Cf.Thomas at ¶ 6.
 {¶ 35} The weapons under disability count in this case included a firearms specification, pursuant to R.C. 2941.145. R.C. 2941.145(A) prohibits an offender from having a firearm on or about his person, or under his control, while committing an offense, if the offender displays the firearm, brandishes it, indicates that he possesses it, or uses it. Mr. Williams notes that he neither brandished the pistol, nor used it, on the evening in question, to attack his conviction on this specification.
 {¶ 36} This argument fails. The pistol was protruding from beneath the front passenger seat of Mr. Williams' Cadillac at the time of his arrest. This was sufficient to put the firearm under his control. Further, it satisfies the requirement that the offender display, or indicate possession, of the firearm. Again, both weight and sufficiency are fulfilled.
 {¶ 37} Regarding his conviction for improperly handling firearms in a motor vehicle, Mr. Williams again asserts that the state failed to prove the mens rea element of the crime. R.C. 2923.16(B) prohibits anyone fromknowingly transporting an accessible, loaded firearm in a car. Mr. Williams asserts that he did not know the pistol was beneath his front passenger seat. This argument fails for the same reason as his attack on the count of having weapons while under disability: under the evidence in this case, the jury was fully entitled to infer that Mr. Williams was aware of the (partially) visible weapon.
 {¶ 38} The third assignment of error is without merit.
 {¶ 39} By his fourth assignment of error, Mr. Williams mounts a challenge to his sentences of three years for having weapons under disability, and eleven months for improperly handling firearms in a motor vehicle. He asserts that these more than minimum sentences are unconstitutional, as they were premised on judicial fact finding, formerly mandated by statute, but now deemed unconstitutional and void by the Supreme Court of Ohio. On that basis, Mr. Williams' fourth assignment of error is with merit.
 {¶ 40} Mr. Williams' sentences in this case are impacted by the recent decision of the Supreme Court of Ohio in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. In Foster, the Supreme Court held that R.C. 2929.14(B) is unconstitutional for violating the Sixth Amendment because it deprives a defendant of the right to a jury trial, pursuant toApprendi v. New Jersey (2000), 530 U.S. 466, and Blakely v.Washington (2004), 542 U.S. 296.
 {¶ 41} Further, pursuant to United States v. Booker (2005),543 U.S. 220, the Supreme Court's remedy was to sever the unconstitutional provisions of the Revised Code, including R.C. 2929.14(B). After severance, judicial fact finding is not required before imposing a sentence within the basic ranges authorized by R.C. 292914(A) based on a jury verdict or admission of the defendant. Foster at paragraph two of the syllabus.
 {¶ 42} Since Foster was released while this case was pending on direct review, Mr. Williams' sentences for having weapons while under disability and for improperly handling firearms in a motor vehicle are void, must be vacated, and remanded for resentencing. Foster at ¶ 103-104. Upon remand, the trial court is no longer required to make findings or give its reasons for imposing more than minimum sentences. Id. at paragraph seven of the syllabus.
 {¶ 43} The judgment of the Trumbull County Court of Common Pleas is affirmed in part, reversed in part, and the matter remanded for proceedings consistent with this opinion pursuant to Foster.
DONALD R. FORD, P.J.,
WILLIAM M. O'NEILL, J.,
concur.