OPINION
{¶ 1} Defendant-appellant, Robert Hillman ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas convicting him of one count of burglary in violation of R.C. 2911.12 entered pursuant to a jury verdict of guilty to the same. Appellant's direct appeal was filed through counsel. Thereafter, appellant filed a supplemental brief, pro se, based upon "inaccurate trial transcripts." Appellant also filed, pro se, an appeal from the trial court's denial of his motion for postconviction relief without *Page 2 
a hearing. This appeal was consolidated with the direct appeal from his conviction, and the consolidated appeals are now before the court for review.
 {¶ 2} The charge herein stems from a burglary that occurred on May 7, 2006, at 186 East 16th Avenue, Columbus, Ohio. The following facts were adduced at trial. Derek Haggerty lived at 186 E. 16th Avenue (hereafter "E. 16th"). At 2 a.m. on May 7, 2006, Mr. Haggerty's roommates were out of town, and he was lying in his bedroom watching television when he heard "footsteps" and "a lot of walking back and forth." (Tr. at 22.) After hearing the back door to the house open from the inside, Mr. Haggerty looked outside and saw a man exiting the house through the back door carrying a white bag.
 {¶ 3} Mr. Haggerty called 9-1-1, gave a description of the man he saw, and told the dispatcher to tell the police to go to the back of the house. While on the phone with the dispatcher, Mr. Haggerty told her the suspect was walking towards 17th Avenue, wearing dark clothing, carrying a white bag and wearing a white hat. Mr. Haggerty then saw a police officer arrive and begin looking for the suspect with a flashlight. Mr. Haggerty went outside, losing sight of the suspect for approximately "20 seconds." Id. at 31. Mr. Haggerty told the police officer the suspect went towards 17th Avenue, whereupon Mr. Haggerty and the officer observed a person in front of a dumpster wearing "dark clothing and a light colored hat, a whitish colored hat." Id. at 32. The hat was described by Mr. Haggerty as "a toboggan type cap." Id. at 39. When asked if the person at the dumpster matched the description of the person he saw going into and out of his residence, Mr. Haggerty replied "absolutely." Id. Mr. Haggerty identified the property in *Page 3 
the bag as belonging to him and his roommates.[1] Mr. Haggerty also noted after the burglary that a window to the residence was opened, though it was closed when he went to bed. Mr. Haggerty testified that no one gave this individual permission to be in the house that night or to take the property.
 {¶ 4} Sergeant Steve Shinaver of the Columbus Police Department testified he was dispatched to a burglary call at E. 16th
Avenue when he was seven or eight blocks from the scene. Upon arriving at the scene, Sgt. Shinaver saw appellant standing in front of a dumpster near E. 16th matching the description given by the 9-1-1 dispatcher, i.e., a black male wearing a white hat, dark clothing, and holding a white bag. When appellant saw Sgt. Shinaver, appellant threw the bag on the ground. When he approached appellant, Sgt. Shinaver observed a white bag containing miscellaneous items, such as CDs and DVDs, and a dark green blanket with video games and food items wrapped inside it. Sgt. Shinaver apprehended appellant for identification purposes. Thereafter, the victim, Mr. Haggerty, identified appellant. Mr. Haggerty also identified the items in the bag and the blanket as belonging to him and his roommates. A light gray cap with the letter "P" on the front and black trim was taken from appellant. Sgt. Shinaver also testified appellant was wearing a "dark green sweater or sweatshirt and a darker colored shirt underneath." Id. at 83.
 {¶ 5} Detective Ronald Love of the Columbus Police Department testified that appellant did not live near E. 16th at the time of the burglary. Based on the victim's identification of appellant, Det. Love explained he did not find it necessary to attempt to *Page 4 
obtain fingerprints. Also, Det. Love explained he attempted to get the clothing appellant was wearing the night of his arrest, but was informed by the Franklin County jail that the clothing appellant had been wearing that night had been traded for clothing appellant needed for court. Therefore, the clothing appellant was wearing the night of his arrest was not available as evidence.
 {¶ 6} On May 16, 2006, appellant was indicted on one count of burglary and one count of theft. The matter proceeded to a jury trial on August 2, 2006. A nolle prosequi was entered as to the theft count. At the conclusion of the trial, the jury found appellant guilty of burglary. A pre-sentence investigation was ordered, and on August 17, 2006, appellant was sentenced to a seven-year determinate sentence.
 {¶ 7} Through counsel, appellant asserts one assignment of error for our review:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 8} In his pro se supplemental brief, appellant asserts the following six assignments of error for our review:
 ASSIGNMENT OF ERROR NUMBER ONE
 THE APPELLANT CONTENDS THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR (1) TRIAL COUNSEL'S FAILURE TO FILE PRE-TRIAL AND POST-TRIAL MOTION. A MOTION TO SUPPRESS THE OUT OF COURT AND IN COURT IDENTIFICATIONS OF THE ALLEGED VICTIM AND, THE TESTIMONY RESULTING THEREFROM. (2) WHEN COUNSEL ALLOWED AND CONTRIBUTED TO PERJURED TESTIMONY GIVEN BY STATE WITNESSES. (3) FOR FAILING TO MAKE TIMELY OBJECTIONS TO IMPROPER AND MISLEADING STATEMENTS BY THE PROSECUTOR DURING TRIAL *Page 5 
AND CLOSING ARGUMENTS. (4) WHEN COUNSEL AIDED IN EXCLUDING EXCULPATORY EVIDENCE FAVORABLE TO APPELLANT FROM BEING PLACED INTO EVIDENCE. (5) FOR NOT REQUESTING THE LESSER-INCLUDED DEGREE OF BURGLARY INSTRUCTIONS BE GIVEN TO THE JURY AFTER THE STATE NOLLE PROSEQUIED THE THEFT ELEMENT. (6) FOR FAILING TO REQUEST AN EYEWITNESS EXPERT ON BEHALF OF THE DEFENSE. (7) FOR NOT FILING AN AFFIDAVIT OF INDIGENCY ON BEHALF OF THE APPELLANT BEFORE THE IMPOSITION OF COURT COST BEING IMPOSED.
 ASSIGNMENT OF ERROR NUMBER TWO
 THE APPELLANT CONTENDS THAT PROSECUTORIAL MISCONDUCT DENIED HIM OF HIS 5TH, 6TH, 13TH, AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTIONS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW WHEN (1) THE PROSECUTOR KNOWINGLY USED FALSE MATERIAL EVIDENCE. (2) THE PROSECUTOR KNOWINGLY ALLOWED AND CONTRIBUTED TO PERJURED TESTIMONY BY STATE WITNESSES. (3) THE PROSECUTOR REPEATEDLY MADE IMPROPER AND MISLEADING STATEMENTS TO THE JURY DURING TRIAL AND CLOSING ARGUMENTS. (4) THE PROSECUTOR KNOWINGLY CONCEALED FAVORABLE EVIDENCE FROM THE DEFENSE IN ITS DISCOVERY AND FROM THE JURY DELIBERATIONS AND FAILED TO PRESERVE EXCULPATORY EVIDENCE.
 ASSIGNMENT OF ERROR NUMBER THREE
 THE APPELLANT CONTENDS THAT THIS CONVICTION ON THE CHARGE OF BURGLARY UNDER OHIO'S STATUTE 2911.12(A)(2) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE VIOLATING THE 14TH
AMENDMENT RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS TO DUE PROCESS.
 ASSIGNMENT OF ERROR NUMBER FOUR
 THE APPELLANT CONTENDS THAT THE TRIAL COURT ABUSES ITS DISCRETION AND, COMMITS PLAIN ERROR IN FIVE INSTANCES. (1) WHEN IT RULES AGAINST THE *Page 6 
APPELLANT'S CRIM. RULE 29 MOTION AT THE CONCLUSION OF THE STATE'S CASE. (2) WHEN THE TRIAL COURT FAILS TO MAKE AN OFFICIAL RULING ON THE APPELLANT'S OBJECTION TO THE PROSECUTOR AND DEFENSE COUNSEL'S DELIBERATE EXCLUSION OF EXCULPATORY EVIDENCE IN THE FORM OF THE POLICE REPORT. (3) FOR NOT INCUDING IN ITS * * * INSTRUCTIONS TO THE JURY AFTER THE STATE NOLLIED THE THEFT OFFENSE, WHICH WAS THE ESSENTIAL ELEMENT AND UNDERLINING OFFENSE OF THE BURGLARY. (4) FOR NOT MAKING AN OFFICIAL INQUIRY INTO THE APPELLANT'S ALLEGATIONS THAT DEFENSE COUNSEL AND PROSECUTOR HAD CONSPIRED TO PRODUCE THE WRONGFUL CONVICTION OF THE APPELLANT BY SHARING INFORMATION AND, COVERING UP THE CONSPIRACY. (5) WHEN THE TRIAL COURT ALLOWED THE STATE TO PROCEED TO PROSECUTE APPELLANT EVEN AFTER THE ALLEGED VICTIM FAILED TO MAKE AN IN-COURT IDENTIFICATION IN VIOLATION OF EVIDENCE RULE 901.
 ASSIGNMENT OF ERROR NUMBER FIVE
 THE APPELLANT CONTENDS THAT HIS CONVICTION ON THE CHARGE OF BURGLARY UNDER SECTION 2911.12(A)(2) WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE WHICH VIOLATED APPELLANT'S 13TH AND 14TH
AMENDMENT RIGHTS UNDER THE OHIO AND U.S. CONSTITUTIONS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW.
 ASSIGNMENT OF ERROR NUMBER SIX
 THE APPELLANT CONTENDS THAT THE STATE OF OHIO LACKED SUBJECT MATTER JURISDICTION TO PLACE APPELLANT ON TRIAL IN VOLATION OF CONST. AMEND 6, CONSTITUTION ARTICLE 1 § 10 RULE OF CRIM PROC. RULE 3.
 {¶ 9} During the pendency of his direct appeal, appellant filed on November 30, 2006, a petition for postconviction relief pursuant to R.C. 2953.21. On August 10, 2007, *Page 7 
the trial court denied appellant's postconviction petition. Appellant appealed this denial and brings the following three assignments of error for our review:
 ASSIGNMENT OF ERROR NUMBER ONE
 THE APPELLANT CONTENDS THAT THE TRIAL COURT'S DISMISSAL OF HIS POST CONVICTION RELIEF MOTION WAS AN ABSOLUTE ABUSE OF DISCRETION AND THUS VIOLATED THE APPELLANT'S 14TH
AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW, AND WHEN TRIAL COURT DELIBERATELY IGNORE PETITIONER'S ALLEGATIONS AND PROOF THAT THE PROSECUTOR KNOWINGLY USED FALSE EVIDENCE AND TESTIMONY AND DENIES PETITION WITHOUT A COMPLETE TRANSCRIPT.
 ASSIGNMENT OF ERROR NUMBER TWO
 THE APPELLANT CONTENDS THAT THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION FOR SUMMARY JUDGMENT THUS VIOLATING THE APPELLANT'S 1ST AND 14TH
AMENDMENT RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW AND, THE RIGHTS TO BE HEARD BEFORE AN UNBIAS COURT.
 ASSIGNMENT OF ERROR NUMBER THREE
 THE APPELLANT CONTENDS THAT THE TRIAL COURT COMMITTED PLAIN AND PREJUDICIAL ERROR IN NOT GRANTING THE APPELLANT'S MOTION FOR DEFAULT JUDGMENT UNDER CIVIL RULE 55 THUS VIOLATING THE APPELLANT'S 14TH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW. . . . . AND ASSIGNMENT OF ERROR NUMBER FOUR IS INCORPORATED INTO ASSIGNMENT OF ERROR NUMBER THREE WHICH IS THE APPELLANT CONTENDS THAT PROSECUTORIAL MISCONDUCT DENIED HIM HIS 5TH, 6TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTIONS [sic] AND THAT SUCH ACTIONS WERE AN INFRINGEMENT OF SUCH NATURE THAT THEY WARRANTED POSTCONVICTION RELIEF *Page 8 
AND WOULD CAUSE THE APPELLANT'S SENTENCE AND CONVICTION TO BE VOID OR VOIDABLE.
 {¶ 10} For ease of discussion, we will first consider the seven assignments of error raised in appellant's direct appeal.
 {¶ 11} In his assignment of error made through counsel, and his third and fifth assignments of error made pro se, appellant challenges both the sufficiency and the weight of the evidence pertaining to his conviction.
 {¶ 12} The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency-of-the-evidence argument in State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
 {¶ 13} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982),70 Ohio St.2d 79, 80. Thus, *Page 9 
a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, supra.
 {¶ 14} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along *Page 10 
with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility.State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 16} While this case turns on circumstantial evidence, the Supreme Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone." State v. Franklin (1991),62 Ohio St.3d 118, 124, citing State v. Nicely (1988), 39 Ohio St.3d 147, 154-155. In fact, circumstantial evidence may "`be more certain, satisfying and persuasive than direct evidence.'" State v. Ballew (1996),76 Ohio St.3d 244, 249, quoting State v. Lott (1990), 51 Ohio St.3d 160, 167, quotingMichalic v. Cleveland Tankers, Inc. (1960), 364 U.S. 325, 330,81 S.Ct. 6, 11.
 {¶ 17} Appellant was convicted of burglary in violation of R.C. 2911.12, which provides in relevant part:
 (A) No person, by force, stealth, or deception, shall do any of the following:
 (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the *Page 11 
structure or in the separately secured or separately occupied portion of the structure any criminal offense;
 (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;
 (3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense;
 (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.
 {¶ 18} Appellant argues there is no physical evidence linking him to the crime at issue, and this is merely a case of mistaken identity. However, we find, if believed, the testimony and circumstantial evidence presented here supports each element of the offense for which appellant was found guilty beyond a reasonable doubt.
 {¶ 19} As described above, the testimony established on May 7, 2006, a person gained entry to Mr. Haggerty's residence at 186 E. 16th Avenue. At approximately 2 a.m., Mr. Haggerty heard footsteps in the residence and looked outside to see a man who had no permission to be there leaving the residence through the back door carrying a white bag. Mr. Haggerty called 9-1-1 and watched the suspect as he walked away toward 17th Avenue. When a police officer arrived, Mr. Haggerty went outside and walked with the officer in the direction the suspect had gone, whereupon they saw a man standing in front of a dumpster. Though Mr. Haggerty testified he lost sight of the suspect for about 20 seconds, Mr. Haggerty stated the person at the dumpster was "absolutely" the person he *Page 12 
saw leaving his residence. Mr. Haggerty also identified the items on the ground by appellant as those belonging to him and his roommates.
 {¶ 20} Sgt. Shinaver testified he was seven or eight blocks away when he received the dispatch to a burglary at 186 E. 16th
Avenue. As he approached the scene, he saw an individual, later identified as appellant, matching the description of the suspect standing near a dumpster and carrying a white bag. Upon seeing the officer, appellant threw down the white bag. The contents of the white bag and those wrapped in a green blanket next to appellant were identified by Mr. Haggerty as belonging to him and his roommates.
 {¶ 21} Based on the evidence and the testimony of the witnesses viewed in a light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of burglary proven beyond a reasonable doubt. Therefore, we cannot conclude there is insufficient evidence to sustain appellant's conviction.
 {¶ 22} Similarly, we cannot say that the jury's verdict was against the manifest weight of the evidence. The basis for appellant's manifest weight challenge is primarily the lack of direct evidence linking appellant to the burglary at issue. While appellant asserts the lack of direct evidence in this matter requires a reversal of his conviction, we note that a conviction is "`not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.'"State v. Rippey, Franklin App. No. 04AP-960, 2005-Ohio-2639, discretionary appeal not allowed by 106 Ohio St.3d 1530, 2005-Ohio-5146, at ¶ 18, quoting State v. Moore, Montgomery App. No. 20005,2004-Ohio-3398, quoting State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757. *Page 13 
 {¶ 23} We have reviewed the entire record and weighed the evidence and all reasonable inferences to be drawn therefrom, and have considered the credibility of the witnesses. After review of the record, we conclude that there is nothing to indicate that the jury clearly lost its way or that appellant's conviction creates a manifest miscarriage of justice. Consequently, we cannot say that appellant's conviction is against the manifest weight of the evidence.
 {¶ 24} Accordingly, we overrule appellant's third, appellant's fifth, and his counsel's single assignment of error.
 {¶ 25} For coherency, we will address appellant's remaining assignments of error out of order. In his second assignment of error, appellant alleges prosecutorial misconduct. Specifically, appellant asserts the prosecutor used false evidence, elicited perjured testimony, made improper closing arguments, and concealed favorable evidence.
 {¶ 26} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13,14-15; State v. Thompson, 161 Ohio App.3d 334, 341, 2005-Ohio-2508, at ¶ 30. Generally, prosecutorial misconduct is not a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial.Lott, supra, at 166. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. State v. Bey (1999),85 Ohio St.3d 487, 495.
 {¶ 27} The false evidence according to appellant is the prosecutor's use of a falsely documented weight of appellant. Appellant asserts the prosecutor used a *Page 14 
previous arrest sheet of appellant stating appellant's weight was 180 pounds when at the time of his arrest appellant weighed only 149 pounds, and at the time of trial he weighed 189 pounds. In order to meet the test for prosecutorial misconduct under these circumstances, appellant must show that: (1) the statement was false, (2) the statement was material, and (3) the prosecutor knew it was false. Columbus v.Joyce (Nov. 29, 2001), Franklin App. No. 00AP-1486. Even if a prosecutor engaged in such misconduct, an appellate court should not reverse a conviction if the error was harmless. Id.
 {¶ 28} Initially, we note the record contains no evidence that the prosecutor knew the weight of appellant was "false," if in fact it was. Secondly, there was no objection to the above testimony at trial; therefore, appellant has waived all but plain error. State v.Keenan (1998), 81 Ohio St.3d 133; State v. Santiago, Franklin App. No. 02AP-1094, 2003-Ohio-2877. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. State v. Moreland (1990), 50 Ohio St.3d 58. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, syllabus paragraph three. Given the evidence in the record establishing appellant was arrested in close proximity to the scene with the victim's property, and the victim positively identified appellant, we cannot find an instance of plain error, such that the outcome of the trial would have been different without the alleged error.
 {¶ 29} Appellant also asserts the prosecutor elicited false testimony because the witnesses gave inconsistent testimony regarding the color of pants appellant was wearing the night of his arrest. To the extent it can be said any of the witnesses gave inconsistent *Page 15 
testimony in this matter, there is nothing in the record to suggest it was the result of the prosecutor's actions. As discussed previously, the determination of weight and credibility of the evidence is for the trier of fact. DeHass, supra. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. Williams, supra. The trier of fact is free to believe or disbelieve all or any of the testimony. Jackson, supra.
 {¶ 30} Appellant next asserts the prosecutor made inappropriate comments during closing arguments. In general, prosecutors are given considerable latitude in opening statement and closing argument.Ballew, supra, at 255. In closing argument, a prosecutor may freely comment on "`what the evidence has shown and what reasonable inferences may be drawn therefrom.'" Lott, supra, at 165, quoting State v.Stephens (1970), 24 Ohio St.2d 76, 82. Appellant did not object during the prosecutor's closing argument. The failure to object to alleged prosecutorial misconduct waives all but plain error. State v.LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 126; State v. Loch, Franklin App. No. 02AP-1065, 2003-Ohio-4701, at ¶ 43. After reviewing the transcripts, we find the prosecutor was summarizing the evidence as was adduced at trial, and we find no evidence of prosecutorial misconduct here.
 {¶ 31} Lastly, appellant asserts the prosecutor withheld exculpatory evidence; namely, the police report made the night of appellant's arrest. To the extent this can be construed as an alleged violation ofBrady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, appellant must establish: (1) the prosecutor suppressed information; (2) the information was favorable to the defense; and (3) the information was material. The *Page 16 
record is barren that any such evidence was kept from him. The police report used to refresh the officer's recollection at trial was available to the defendant, and his counsel cross-examined the officer about the report, wherein she elicited the fact that the testifying officer did not write the report. Moreover, there is no evidence the police report contained anything favorable to appellant as his counsel stated "the things that were written in that report are not helpful to Mr. Hillman." (Tr. at 125.)
 {¶ 32} For the foregoing reasons, we overrule appellant's second assignment of error.
 {¶ 33} In his fourth assignment of error, appellant suggests the trial court abused its discretion and committed plain error when it denied his Crim. R. 29 motion made at the conclusion of the prosecution's case. "The standard of review applied to a denied motion for acquittal pursuant to Crim. R. 29 is virtually identical to that employed in a challenge to the sufficiency of the evidence." State v. Turner, Franklin App. No. 04AP-364, 2004-Ohio-6609, at ¶ 8, appeal not allowed106 Ohio St. 3d 1547, 2005-Ohio-5343, citing State v. Ready (2001), 143 Ohio App.3d 748,759. We have already determined there was sufficient evidence to support appellant's conviction; therefore, we find no merit to this argument.
 {¶ 34} Appellant next contends the trial court erred in not ruling on his objection to exclude the police report. According to appellant, Sgt. Shinaver testified that he saw appellant throw a white bag, and that appellant was wearing "light" pants when arrested, but neither of these statements appear in the police report. With respect to admissibility of police reports, it is well-established that police reports are generally inadmissible hearsay, unless offered by the defendant, unless the source of information or other *Page 17 
circumstances indicate lack of trustworthiness. Evid. R. 803; State v.Williams, Trumbull App. No. 2005-T-0123, 2006-Ohio-6689, citingState v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235. Appellant did not offer the police report into evidence, and there is no evidence of a "lack of trustworthiness" in the matter before us, therefore, there is nothing to suggest the police report would be admissible in the matter herein. Further, when appellant raised this issue to the trial court, i.e., that the police officer gave false testimony and that his counsel shared confidential exculpatory information with the prosecutor, his counsel stated:
 Thank you. Just for the record I deny, and I want to state for the record that I absolutely deny in any shape or form that I shared any information whatsoever with the prosecutor as to the police reporting question.
 Your Honor, there has not been any information shared and your Honor, the police report has not been entered into evidence, that's number one. And also the police officer who actually wrote that report was not here, and the things that were written in that report are not helpful to Mr. Hillman. And that is one of the reasons why I did not want to have that come into evidence.
(Tr. at 125.)
 {¶ 35} Appellant next argues the trial court erred in not instructing the jury on a "lesser degree of burglary under 2911.12(A)(4) after the trial court illegally allowed the prosecutor to nolle prosequi the theft offense just prior to jury deliberations." (Nov. 27, 2007 Brief at 24.) Such instruction was not requested at trial, and, therefore, appellant has waived all but plain error. State v. Dennis, Franklin App. No. 04AP-595, 2005-Ohio-1530. *Page 18 
 {¶ 36} An instruction on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. Id., at ¶ 15, citing State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. As we discussed in our disposition of appellant's previous assignments of error, appellant was convicted of burglary under R.C. 2911.12(A)(2), and we have determined there was sufficient evidence to support this conviction and that this conviction is not against the manifest weight of the evidence. Therefore, we find no merit to appellant's argument that he was entitled to an instruction on a lesser-included offense.
 {¶ 37} Appellant next contends the trial court did not inquire into his allegation that his trial counsel and the prosecutor "had conspired by sharing information and allowing state witnesses to commit perjury." (Nov. 27, 2007 Brief at 25.) However, we find the transcript clearly refutes appellant's position. In addition to appellant's counsel's comments cited above, the prosecutor stated:
 Your Honor, I take offense to that. The bottom line here is Sgt. Shinaver testified to his clothing and said that his pants were lighter in color, not light gray pants or anything like that. He just was making a color contrast statements, but all of this is an issue for the jury to decide.
(Tr. at 124.)
 {¶ 38} Additionally, the trial court stated:
 All right, the court had the benefit of Mr. Hillman's statement, and we are now ready to proceed with closing arguments; and also the court wants to put on the record that I have found no prosecutorial misconduct, and the court further finds that [appellant's counsel] is to continue to represent Mr. Hillman, and that [appellant's counsel] has conducted herself most professionally and effectively and has continued to do that *Page 19 
throughout this trial, and we are now ready to begin with closing arguments.
Id. at 126.
 {¶ 39} Lastly, under this assignment of error, appellant contends his sentence is contrary to law because the jury's verdict was based on a defective indictment. Because his sixth assignment of error concerns the indictment, we will address this last argument in our disposition of appellant's sixth assignment of error.
 {¶ 40} For the foregoing reasons, we overrule appellant's fourth assignment of error.
 {¶ 41} In his sixth assignment of error, appellant contends the trial court lacked subject matter jurisdiction based on a defective indictment. It is well-established that a common pleas court has original jurisdiction in felony cases and its jurisdiction is invoked by the return of an indictment. Click v. Eckle (1962), 174 Ohio St. 88, 89. Further, as argued by appellee, an indictment is proper pursuant to Crim. R. 7(B) when it is signed and contains a statement that the defendant has committed a public offense specified in the indictment. In this case, count one of the indictment contained the crime charged under R.C. 2911.12, set forth the requisite statutory language, and clearly put appellant on notice of the crime of which he was charged. Contrary to appellant's assertions, the indictment was not amended. Rather, a nolle prosequi was entered pertaining to the theft charge contained in count two of the indictment. Upon review, we find the indictment in the matter before us was not defective, and, therefore, overrule appellant's sixth assignment of error. *Page 20 
 {¶ 42} In his first assignment of error, appellant contends he was denied effective assistance of trial counsel as guaranteed by the United States and Ohio Constitutions. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v.Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Id. at 687. The defendant must then establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 698.
 {¶ 43} According to Strickland:
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687. *Page 21 
 {¶ 44} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689, quotingMichel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158. A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. State v. Hester
(1976), 45 Ohio St.2d 71, 75.
 {¶ 45} Appellant contends his counsel was ineffective for: (1) failing to file a motion to suppress; (2) allowing and contributing to perjured testimony; (3) failing to object during trial and closing arguments; (4) aiding in excluding exculpatory evidence from trial; (5) not requesting a lesser-included degree of burglary; and (6) failing to request an eyewitness expert.
 {¶ 46} In his first assignment of error, appellant asserts his counsel was ineffective for failing to file a motion to suppress the victim's identification of him. It is appellant's position the identification should have been suppressed because it was made at the "highly suggestive show-up" and the victim's identification of appellant was unreliable. The "`[f]ailure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted.'" State v. Shipley, Franklin App. No. 05AP-385, 2006-Ohio-950, at ¶ 15, quoting State v. Randall, Franklin *Page 22 
App. No. 03AP-352, 2003-Ohio-6111, at ¶ 15. Trial counsel is not required to file futile motions. See State v. McDonall (Dec. 16, 1999), Cuyahoga App. No. 75245.
 {¶ 47} A "show-up" is inherently suggestive. See, e.g., Ohio v.Barnett (1990), 67 Ohio App.3d 760. However, the "admission of evidence of a showup without more does not violate due process." Neil v.Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375. A defendant is entitled to the suppression of eyewitness identification of the defendant at a show-up only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Id.; Simmons v. United States (1968), 390 U.S. 377,384, 88 S.Ct. 967; State v. Madison (1980), 64 Ohio St.2d 322, 331;State v. Butler (1994), 97 Ohio App.3d 322, 325, appeal dismissed (1995), 71 Ohio St.3d 1464. The factors to consider when "evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil, at 199.
 {¶ 48} Here, Mr. Haggerty testified he viewed a man exit the house with a white bag in his hands. Mr. Haggerty described the individual as a black male wearing dark clothing and a white hat. Mr. Haggerty watched the man exit the back of the house and walk toward 17th
Avenue. Mr. Haggerty stated he lost sight of the person for approximately 20 seconds until he and a police officer turned a corner and saw the individual standing in front of a dumpster. Mr. Haggerty testified appellant was absolutely the man he saw leaving his residence with the white bag. Further, items from Mr. *Page 23 
Haggerty's house were found on the ground by appellant, some contained in a white bag, others wrapped in a dark colored blanket.
 {¶ 49} Given the victim's opportunity to view appellant as he was exiting the residence, the victim's description of appellant, the very short time between the commission of the crime and the victim's identification of appellant, we cannot say that the show-up identification procedure created a substantial likelihood of misidentification such that a defense counsel's motion to suppress the victim's identification of appellant at the scene would have been granted.
 {¶ 50} Appellant next claims his counsel permitted the prosecutor to present perjured testimony. This allegation, as discussed under appellant's prior assignments of error, stems from Sgt. Shinaver's testimony. We have already found no evidence in the record to support appellant's blanket assertion regarding perjured testimony. To the extent appellant asserts Sgt. Shinaver's testimony was inconsistent, such is a matter within the purview of the jury's determination.
 {¶ 51} Appellant also contends his counsel was ineffective because she tried to bully him into taking a plea and she did not prepare for trial. The record, including the trial court's finding of appropriate and professional conduct by appellant's counsel, clearly refutes appellant's position. (Tr. at 126.)
 {¶ 52} Appellant asserts Sgt. Shinaver's testimony, that he saw appellant throw a white bag later determined to contain items from Mr. Haggerty's residence, was prejudicial and should not have been admitted. However, appellant provides, and we find no basis for this assertion. *Page 24 
 {¶ 53} Appellant also contends the police report was withheld from him, and his counsel failed to object to the prosecutor's closing arguments. As we have already discussed, there is no evidence the police report was withheld from appellant, and his counsel cross-examined the officer who used the report to refresh his recollection during trial. Further, we have determined there was no basis for appellant's prosecutorial misconduct claim pertaining to the prosecutor's closing arguments. Therefore, we are not able to find error in trial counsel's alleged failure to object.
 {¶ 54} Appellant contends his counsel was ineffective for failing to request an instruction on a lesser-included offense. Again, we have already determined that appellant was not entitled to a jury instruction on a lesser-included offense in this case. Further, trial counsel's failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. Dennis, supra.
 {¶ 55} Lastly, appellant contends under this assignment of error that his counsel was ineffective for failing to obtain an "eyewitness expert." However, State v. Madrigal (2000), 87 Ohio St.3d 378, disposes of this argument. In Madrigal, the Supreme Court of Ohio declined to find ineffective assistance of counsel based on the failure to employ an eyewitness identification expert because the argument was purely speculative since "nothing in the record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal." Id. at 390-391.
 {¶ 56} Accordingly, we overrule appellant's first assignment of error. *Page 25 
 {¶ 57} We now address appellant's assignments of error pertaining to the trial court's denial of his petition for postconviction relief.
 {¶ 58} On November 30, 2006, appellant filed a petition for postconviction relief pursuant to R.C. 2953.21 and asserted several allegations. Appellant amended his petition leaving only his claim for prosecutorial misconduct for review. On August 10, 2007, the trial court issued findings of fact and conclusions of law wherein the trial court denied appellant's postconviction petition. The trial court found appellant failed to establish relief under Maryland, supra, because appellant failed to specify what exculpatory evidence was excluded, how such evidence was exculpatory, or how appellee failed to provide full discovery. Further, the trial court found appellant failed to present sufficient operative facts as to how appellee presented false evidence or to establish prosecutorial misconduct.
 {¶ 59} In his first assignment of error, appellant contends the trial court abused its discretion in denying his petition for postconviction relief without an evidentiary hearing. Appellant's right to postconviction relief arises from R.C. 2953.21(A)(1), which provides:
 Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 60} "A petition for postconviction relief is a statutory vehicle designed to correct the violation of a defendant's constitutional rights." State v. Hessler, Franklin App. *Page 26 
No. 01AP-1011, 2002-Ohio-3321, at ¶ 22. Though designed to address alleged constitutional violations, the postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v. Calhoun (1999), 86 Ohio St.3d 279, 281; State v.Steffan (1994), 70 Ohio St.3d 399, 400. It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. Id. at ¶ 23, citingState v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. Appellant does not have a constitutional right of postconviction review.Calhoun, at 281. Rather, postconviction relief is a narrow remedy that affords appellant no rights beyond those granted by statute. Id. A postconviction relief petition does not provide a petitioner a second opportunity to litigate his or her conviction. Hessler, supra.
 {¶ 61} A petitioner who seeks to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing. State v. Jackson (1980), 64 Ohio St.2d 107, 110. "Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief."Calhoun, at 291. We apply an abuse-of-discretion standard when reviewing a trial court's decision to deny a postconviction petition without a hearing. State v. Campbell, Franklin App. No. 03AP-147, 2003 Ohio 6305, citing Calhoun, at 284. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. "Postconviction review is a narrow remedy *Page 27 
since res judicata bars any claim that was or could have been raised at trial or on direct appeal." Steffan, supra, at 410.
 {¶ 62} Appellant argues there were multiple instances of prosecutorial misconduct that affected his right to a fair trial. The misconduct alleged includes procuring false testimony and making inappropriate closing arguments. The instances complained of, however, are contained in the record and, as demonstrated above, have been raised, and addressed, in appellant's direct appeal. Therefore, we find appellant's postconviction collateral attack on the basis of prosecutorial misconduct is barred by res judicata. State v. Sowell, Franklin App. No. 07AP-809, 2008-Ohio-1518.
 {¶ 63} Appellant also raises arguments pertaining to the "deliberate exclusion" of the police report from evidence and asserts such conduct constitutes a Brady violation. This argument, however, is also barred by res judicata as the matter complained of is contained in the record and was raised, and addressed, in appellant's direct appeal. Thus, we find no error in the dismissal of appellant's petition for postconviction relief without a hearing as appellant failed to set forth sufficient operative facts to establish substantive grounds for relief. Accordingly, we overrule appellant's first assignment of error.
 {¶ 64} In his second and third assignments of error, appellant makes an argument pertaining to Civ. R. 56 and 55. Specifically, appellant contends the trial court should have granted his motion for summary judgment and the trial court should have granted default judgment in his favor because appellee did not respond to his motion for summary judgment. The judgment entry appealed from concerns the trial court's denial of appellant's postconviction petition relief pursuant to R.C. 2953.21. "When a trial court *Page 28 
fails to rule on a pre-trial motion, it may ordinarily be presumed that the court overruled it." State ex rel. The V. Cos. v. Marshall (1998),81 Ohio St.3d 467, 469. Thus, by denying appellant's petition for postconviction relief, the trial court effectively denied both his motions filed pursuant to Civ. R. 56 and 55. We have already determined under the previous assignment of error that the trial court did not err in dismissing appellant's postconviction petition. Therefore, we find, regardless of any other potential procedural deficiencies, there is no basis for appellant's contention he was entitled to summary judgment and/or a default judgment on his claims. As such, we overrule appellant's second and third assignments of error.
 {¶ 65} For the foregoing reasons, appellant's ten assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas are hereby affirmed.
Judgments affirmed.
BRYANT and TYACK, JJ., concur.
[1] The property consisted of two gaming systems, video games, DVDs, CDs, and miscellaneous food items. *Page 1